98 P.3d 513 (2004)
123 Wash.App. 467
STATE of Washington, Respondent,
v.
Jerry Lee MORRIS, Appellant.
State of Washington, Appellant,
v.
Vincent Edward Johnson, Respondent.
State of Washington, Appellant,
v.
Chad William Blaylock, Respondent.
Nos. 29941-1-II, 30000-1-II, 30001-0-II, 30003-6-II.
Court of Appeals of Washington, Division 2.
September 21, 2004.
*514 J. Tobin Krauel, Heiko Philipp Coppola, Cowlitz Co. Prosecutors Office, Kelso, WA, Therese M. Murphy, Kittitas Co. Prosecutor's Office, Ellensburg, WA, for Respondent.
John A. Hays, Attorney at Law, Longview, WA, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellants.
HOUGHTON, P.J.
In this consolidated appeal from two counties, the State (Cowlitz County) appeals the trial court's sentencing of Chad William Blaylock and Vincent Edward Johnson under former RCW 69.50.401(a)(1)(iii) (2002) instead of former RCW 69.50-.401(a)(1)(ii). In an appeal from Lewis County, Jerry Lee Morris appeals his sentence for his conviction of second degree unlawful possession of a firearm and possession of a controlled substance with intent to deliver under former RCW 69.50.401(a)(1)(ii).[1] Morris also appeals the trial court's determination that both his 1995 and his current convictions were the same criminal conduct for sentencing purposes. We affirm Blaylock's and Johnson's sentences, and we vacate Morris's sentence under former RCW 69.50.401(a)(1)(ii) and remand for his resentencing.

FACTS

State v. Blaylock and Johnson
Chad William Blaylock pleaded guilty to one count of delivering methamphetamine in violation of the Uniform Controlled Substances Act (VUCSA) and one count of VUCSA  possession of methamphetamine with intent to deliver while armed. Vincent Edward Johnson pleaded guilty to one VUCSA count  delivery of methamphetamine.
At sentencing, the parties presented experts who testified that, although methamphetamine hydrochloride and methamphetamine base share the same chemical backbone, the two form distinct substances, with distinct chemical structures, compositions, and characteristics. One of the State's experts testified that, although methamphetamine hydrochloride has more *515 versatile uses, it is possible to ingest both the base and salt forms of methamphetamine.
The trial court then found a distinction between methamphetamine base and methamphetamine hydrochloride. And it determined that our decision in State v. Halsten, 108 Wash.App. 759, 33 P.3d 751 (2001),[2] compelled its finding that methamphetamine hydrochloride is not methamphetamine for purposes of former RCW 69.50.401(a)(1). Accordingly, the trial court sentenced Blaylock and Johnson under former RCW 69.50.401(a)(1)(iii), resulting in an offender score of 4 for each offense, instead of 8 as the State advocated. The State appeals Blaylock's and Johnson's sentences.

State v. Morris
Jerry Lee Morris pleaded guilty to one count of second degree unlawful possession of a firearm and one count of possession of a controlled substance with intent to deliver. At a sentencing hearing to determine the identity of the controlled substance for Morris's current offense, the State's expert explained the differences between methamphetamine base and methamphetamine hydrochloride, noting that methamphetamine base is a precursor. The expert also testified that tests conducted on the substances found in Morris's possession indicated that, to the extent the samples contained a methamphetamine compound, it was likely a salt of methamphetamine such as methamphetamine hydrochloride.
The trial court then found beyond a reasonable doubt that the controlled substance Morris pleaded guilty to possessing with intent to deliver was methamphetamine hydrochloride. And, based on Halsten, the court initially determined that methamphetamine hydrochloride fell under former 69.50.401(a)(1)(iii). Halsten, 108 Wash.App. 759, 33 P.3d 751. It later changed its ruling and noted that it believed that the legislature intended the word "methamphetamine" to include methamphetamine, its salts, isomers, and salts of its isomers for purposes of former RCW 69.50.401(a)(1)(ii).
In sentencing Morris, the trial court also determined that in 1995, a jury convicted Morris of possession of a controlled substance and unlawful possession of a firearm. During sentencing for Morris's current offenses, the court ruled that the 1995 offenses were not the same criminal conduct for sentencing purposes. In light of this ruling, Morris waived his argument that his current convictions were the same criminal conduct for sentencing purposes, and the court found them not to be the same criminal conduct.
Morris appeals the sentencing court's rulings that (1) neither his current offenses nor his 1995 offenses were the same criminal conduct; and (2) methamphetamine, for purposes of former RCW 69.50.401(a)(1)(ii), means both methamphetamine base and methamphetamine hydrochloride.

ANALYSIS

Former RCW 69.50.401(a)(1)
In its appeal, the State contends that in ruling that Blaylock and Johnson did not possess methamphetamine for purposes of former RCW 69.50.401(a)(1)(ii), the trial court circumvented legislative intent, resulting in an absurd interpretation and application of the statute. The State argues that former RCW 69.50.401(a)(1)(ii) is ambiguous and that the legislature could not have meant that trafficking in pure methamphetamine was a more serious offense than trafficking in methamphetamine hydrochloride. The State further argues that to correctly apply the statute, the court must refer to the schedule under which the controlled substance is categorized.
In his appeal, Morris contends that because former RCW 69.50.401(a)(1)(ii) specifically *516 names only methamphetamine, possession with intent to deliver methamphetamine hydrochloride, a salt of methamphetamine, is not included within that statutory prohibition.[3] He argues that because he possessed methamphetamine hydrochloride and not methamphetamine base, he should be sentenced under former RCW 69.50.401(a)(1)(iii).
We review the meaning of a statute de novo. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001), cert. denied, 534 U.S. 1130, 122 S.Ct. 1070, 151 L.Ed.2d 972 (2002). Where the meaning of a statute is clear on its face, we assume that the legislature means exactly what it says, giving criminal statutes literal and strict interpretation.[4]Keller, 143 Wash.2d at 276, 19 P.3d 1030; Halsten, 108 Wash.App. at 762, 33 P.3d 751. And we construe statutes as a whole to give effect to all language and to harmonize all provisions. Halsten, 108 Wash.App. at 763, 33 P.3d 751.
Here, the relevant statutes provided:
Former RCW 69.50.401:
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
(1) Any person who violates this subsection with respect to:
....
(ii) amphetamine or methamphetamine, is guilty of a crime and upon conviction may be imprisoned for not more than ten years, or [remainder refers to the fine and is not relevant to our analysis];
(iii) any other controlled substance classified in Schedule I, II, or III, is guilty of a crime and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both.
Former RCW 69.50.440:
It is unlawful for any person to possess ephedrine, pseudoephedrine, or anhydrous ammonia with intent to manufacture methamphetamine. Any person who violates this section is guilty of a crime and may be imprisoned for not more than ten years, fined not more than twenty-five thousand dollars, or both. [Remainder refers to the fine and is not relevant to our analysis.]
In Halsten, 108 Wash.App. at 762, 33 P.3d 751, we held that former RCW 69.50.440 (2000) was "plain and clear" when it named pseudoephedrine and not pseudoephedrine hydrochloride. Here, the statutory language is similarly plain and clear; the statute names only methamphetamine, not methamphetamine hydrochloride. In certain sections of the Uniform Controlled Substances Act, chapter 69.50 RCW, the legislature specifies that both a drug and its salts are covered.[5] Specifically, the legislature recognizes that methamphetamine exists in different forms. See RCW 69.50.206(d)(2) (schedule II includes methamphetamine, its salts, isomers, and salts of its isomers). Thus, when the legislature intends for a statute to cover a drug and its salts, it is capable of saying so. *517 The language of former RCW 69.50.401(a)(1)(ii) is therefore unambiguous; its prohibition only covers methamphetamine in its pure form, its base.[6]
Because the legislature did not list methamphetamine's "salts, isomers, and salts of its isomers" in the prohibition under former RCW 69.50.401(a)(1)(ii), Morris must be sentenced under former RCW 69.50.401(a)(1)(iii). The trial court erred in sentencing Morris under former RCW 69.50.401(a)(1)(ii), and his sentence must be vacated and the matter remanded for resentencing.
As to Blaylock and Johnson, the trial court did not err when it sentenced them under former RCW 69.50.401(a)(1)(iii).

Same Criminal Conduct
Morris also contends that his 1995 convictions of possession of a controlled substance and unlawful possession of a firearm were the same criminal conduct for sentencing purposes. Morris also makes the same argument with respect to his current offenses.
Under the same criminal conduct test, two or more current offenses are counted as one crime only if they (1) have the same objective criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. State v. Tili, 139 Wash.2d 107, 123, 985 P.2d 365 (1999); former RCW 9.94A.400(1)(a) (2000). Each element of the test must be satisfied for multiple offenses to encompass the same criminal conduct. State v. Lessley, 118 Wash.2d 773, 778, 827 P.2d 996 (1992). We will not disturb the trial courts determination of whether two crimes involve the same criminal conduct for sentencing purposes unless there is a clear abuse of discretion or misapplication of law. State v. Elliott, 114 Wash.2d 6, 17, 785 P.2d 440, cert. denied, 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990).
Morris argues that his convictions of possession of a controlled substance and unlawful possession of a firearm should be counted as the same criminal conduct because they occurred at the same time and involved the same victim (the public at large[7]), and because he possessed the firearm in order to protect his drug supply. In State v. Miller, 92 Wash.App. 693, 707, 964 P.2d 1196 (1998), review denied, 137 Wash.2d 1023, 980 P.2d 1282 (1999), we explained that the test for whether two crimes had the same criminal intent "requires the court to focus on `the extent to which a defendant's criminal intent, as objectively viewed, changed from one crime to the next.'" (quoting Lessley, 118 Wash.2d at 777, 827 P.2d 996).
Morris urges us to focus on whether one crime furthered the other. Although this is one factor in determining whether the convictions comprised the same criminal conduct, the Supreme Court explained that the "furtherance test" was never meant to be and never has been the lynchpin of "same criminal conduct" analysis. State v. Dunaway, 109 Wash.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987). Additionally, the application of the "furtherance test" to crimes occurring literally at the same time is limited. State v. Vike, 125 Wash.2d 407, 412, 885 P.2d 824 (1994) (noting that the test better lends itself to sequentially committed crimes).
The intent in unlawfully possessing a firearm is different from the intent in possessing a controlled substance with intent to deliver even if possessing one conveniently facilitates possession of the other. See, e.g., State v. Adame, 56 Wash.App. 803, 811, 785 P.2d 1144, review denied, 114 Wash.2d 1030, 793 P.2d 976 (1990). Thus, Morris's possession of methamphetamine hydrochloride with intent to deliver and his unlawful possession of a firearm are not the same criminal conduct.[8] The trial court did not abuse its discretion in so finding.
*518 We affirm Blaylock's and Johnson's sentences. In Morris's case, we affirm the trial court's ruling that both the 1995 and the current offenses did not constitute the same criminal conduct for sentencing purposes. But because the trial court improperly sentenced Morris under former RCW 69.50.401(a)(1)(ii), we vacate the sentence and remand for resentencing.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] The legislature renumbered the statute in 2003. There are small differences between the former and current statutes; however, they are substantively the same for purposes of our analysis. The current RCW 69.50.401(2)(b) and (c) are the equivalents of former RCW 69.50.401(a)(1)(ii) and (iii).
[2] In Halsten, the State charged Halsten with possessing pseudoephedrine with intent to manufacture methamphetamine because he possessed cold tablets that contained pseudoephedrine hydrochloride. Halsten moved to dismiss, arguing that pseudoephedrine hydrochloride was not the same as pseudoephedrine, which is the only drug the statute banned. The trial court denied the motion and found Halsten guilty. On appeal, we agreed with Halsten's theory and reversed, holding that by its plain language, former RCW 69.50.440 (2000) only applied to pseudoephedrine and not pseudoephedrine hydrochloride. Halsten, 108 Wash.App. at 764, 33 P.3d 751.
[3] Blaylock and Johnson similarly argue that sentencing for possession with intent to deliver and delivery of methamphetamine hydrochloride should be under former RCW 69.50.401(a)(1)(iii), while sentencing for possession with intent to deliver and delivery of methamphetamine base should be under former RCW 69.50.401(a)(1)(ii).
[4] The Cowlitz and Lewis County prosecutors disagree whether the language in former RCW 69.50.401(a)(1)(ii) is ambiguous. Because we hold that it is not ambiguous, we decline to conduct the statutory construction analysis that would be proper in a case involving an ambiguous statute. State v. Wilson, 125 Wash.2d 212, 216-17, 883 P.2d 320 (1994) (a statute that is clear does not require the application of statutory construction rules).
[5] See, e.g., RCW 69.50.101(q) ("[m]arijuana ... means all parts of the plant Cannabis ... and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin"); RCW 69.50.206(b)(1) ("opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate"); RCW 69.50.206(b)(4) ("[c]oca leaves and any salt, compound, derivative, or preparation of coca leaves including cocaine and ecgonine, and their salts, isomers, derivatives, and salts of isomers and derivatives"); RCW 69.50.210(b) (depressants, including their salts, isomers, and salts of isomers); former RCW 69.50.402(a)(3)(i) ("unlawful for any person [ ] who is a practitioner, to prescribe, order, dispense, administer, supply, or give to any person [ ] any amphetamine, including its salts, optical isomers, and salts of optical isomers").
[6] Even if the statute is ambiguous, we must construe it in Morris's favor. See State v. Van Woerden, 93 Wash.App. 110, 116, 967 P.2d 14 (1998) (in the absence of contrary legislative intent, we apply the rule of lenity, which resolves statutory ambiguities in favor of the criminal defendant), review denied, 137 Wash.2d 1039, 980 P.2d 1286 (1999). Our construction would narrowly interpret the statute to cover exactly what the statute says: methamphetamine. See Halsten, 108 Wash.App. at 763, 33 P.3d 751.
[7] See State v. Garza-Villarreal, 123 Wash.2d 42, 47, 864 P.2d 1378 (1993).
[8] Because we affirm the trial court's ruling that the 1995 convictions were not the same criminal conduct, and because the trial court treated Morris's current convictions as separate offenses for the same reasons, we need not separately address Morris's contention that the current offenses were the same criminal conduct.